**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF PUBLIC WELFARE,** | ) ) ) | **2:04-cv-00742** |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | |
| **UNITED STATES OF AMERICA; and, DEPARTMENT OF HEALTH AND HUMAN SERVICES,** | ) ) ) ) | |
| **Defendants.** | ) ) | |

## MEMORANDUM OPINION

Before the Court for disposition are the DEFENDANTS' MOTION TO DISMISS

("Motion to Dismiss") filed by defendants United States of America and United States Department

of Health and Human Services (collectively referred to herein as "HHS") on August 4, 2004 and

PLAINTIFF'S MOTION FOR SUMMARY JUDGEMENT ("Motion for Summary Judgment")

filed by plaintiff Commonwealth of Pennsylvania Department of Public Welfare ("PADPW") on

October 20, 2004. [1] HHS filed the Administrative Record on August 4, 2004; PADPW filed a

Summary Judgment Appendix with its Motion for Summary Judgment.

After considering the parties' filings, the administrative record, summary judgment

appendix and the relevant statutory and case law, the Court will grant the Motion for Summary

Judgment filed by PADPW and deny the Motion to Dismiss filed by HHS.

### I.  INTRODUCTION

This case requires the Court to review a decision by HHS to disapprove an amendment to

Pennsylvania's Title IV-E state plan proposed by PADPW.  The proposed amendment would have

altered the eligibility standards for Pennsylvania's Aid to Families with Dependent Children -

Foster Care program ("AFDC-FC").  After HHS notified PADPW of its decision not to approve

---

[1] Both parties' motions are accompanied by supporting briefs.  Defendants also filed an OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS.  For the sake of convenience, unless otherwise indicated, the Court refers to all of the documents filed by defendants as "Motion to Dismiss" and all of the documents filed by plaintiff as "Motion for Summary Judgment."

the plan amendment and without further administrative review, PADPW filed a COMPLAINT in this Court on May 18, 2004 pursuant to 5 U.S.C. § 704.  PADPW alleged that HHS's decision was arbitrary, capricious, and otherwise invalid under 5 U.S.C. § 706(2).[2]

## II.  FACTUAL HISTORY

The facts in this case are not disputed.  Pennsylvania established its AFDC-FC program under Title IV-E of the Social Security Act.  *See* 42 U.S.C. § 670 et. seq.  Title IV-E requires participating states to have a state plan for foster care and adoption assistance approved by the Secretary of HHS.  42 U.S.C. § 671.   On October 1, 2003, PADPW submitted to HHS a proposed amendment to its state AFDC-FC program; the proposed amendment would have altered the eligibility criteria for AFDC-FC.  AFDC-FC benefits cover "the cost of food, clothing, shelter, daily supervision, school supplies, a child's personal incidentals, liability insurance with respect to a child and reasonable travel to the child's home for visitation."   42 U.S.C. § 675(4)(A).   Because of foster children's special needs, the amount of money provided to foster children in the form of AFDC-FC benefits has been considerably more generous than that provided under AFDC and now TANF.[3]  *California Department of Social Services v. Thompson*, 321 F.3d 835, 841(9th Cir. 2003) (citing *Miller v. Youakim,* 440 U.S. at 143 (1979)).

42 U.S.C. § 672(a) sets forth the requirements that a state plan must have in place for receipt of AFDC-FC benefits.  One requirement included in section 672(a) is that a child have been removed from the home of her parent or legal guardian.  Removal can either occur as a result of a "judicial determination to the effect that continuation therein would be contrary to the welfare of such child"  or by voluntary placement agreement "entered into by the child's parent or legal

---

[2]  HHS did not file an ANSWER to the plaintiff's COMPLAINT after this Court granted its MOTION TO EXTEND TIME to serve their response to the plaintiff's COMPLAINT.  Instead, HHS submitted the Motion to Dismiss.  Federal Rule of Civil Procedure 12 provides that a "motion permitted under this rule" alters the normal time requirements for submission of an Answer.

[3] Congress repealed the AFDC program  in 1996; AFDC provided monetary benefits to needy children who resided with a parent, legal guardian or specified relative.  Congress replaced the AFDC program  with the Temporary Assistance to Needy Families ("TANF") program.  As discussed more fully *infra* Part III.C, benefits to children in foster care under AFDC-FC remain contingent on qualification for AFDC under that program's requirements in existence in 1996.  *See* Pub. L. No. 104-193 (Aug. 22 1996); 42 U.S.C. § 672.

guardian." 42 U.S.C. § 672(a).  Removal is, therefore, a legal action that is distinct from physical removal from the home.  The Court will refer to the home from which a child is legally removed as the "Removal Home."  Section 672(a) also includes the requirement that a child satisfy the requirements of the old AFDC program at the time of legal removal.[4]

PADPW proposed an amendment to its state plan such that "a child need not be eligible under [AFDC in the Removal Home], but need only have been eligible for AFDC in the home of any specified relative (including that of an interim caretaker) within six months of the date a voluntary placement agreement was signed or in which removal proceedings were initiated."  Administrative Record at 1.  In other words, although the state plan had previously provided that AFDC qualification was evaluated exclusively in the Removal Home, PADPW proposed that a child could receive AFDC-FC benefits if she would have qualified for AFDC in the home of a relative where the child was temporarily residing at the time of removal.  For ease, the Court will refer to this latter arrangement as "Temporary Relative Housing".[5]

PADPW's amendment would have expanded the class of children eligible for AFDC-FC benefits in Pennsylvania.  PADPW informed HHS that its proposed amendment was in accordance with and intended to "implement in Pennsylvania the decision of the United States Court of Appeals Ninth Circuit decision in the case of *State of California Department of Social Services v. Thompson*, 321 F.3d 835 (9th Cir. 2003)."  *Id.*

On October 28, 2003, David Lett, Regional Administrator of HHS' Administration for Children and Families, Region III, sent a letter to PADPW informing it that he would not approve the plan amendment because it was "not consistent" with the Title IV-E statute and its implementing regulations which required that the AFDC determination could only be based on the

---

[4]As discussed more fully *infra* Part III, section 672(a) does not specifically state that a child satisfy the requirements of AFDC at the time of removal; instead, section 672 cross references sections 606 and 607 as they existed in 1996.  Those two historic sections contained the basic requirement for AFDC eligibility - that the child be "dependent" as defined in those sections.  HHS and PADPW refer to "AFDC eligibility" throughout their briefs to this Court.  The Court will adopt the same language when it refers to the statutory requirement.

[5] A relative can apply for certification as a foster parent such that Temporary Relative Housing is not always temporary.

Removal Home.  In addition, the letter advised PADPW that the *Thompson* decision from the Ninth Circuit that PADPW relied upon "applie[d] only to States within the Ninth Circuit ... Consequently Pennsylvania must continue to determine [T]itle IV-E eligibility in a manner consistent with the Federal statute and regulations ..."   Administrative Record at 15.

On November 26, 2003, PADPW contacted HHS and requested reconsideration of the decision.  The letter noted that PADPW would seek judicial review if it did not receive a response within thirty days.  On January 30, 2004, HHS sent a letter to PADPW in which the Assistant Secretary for Children and Families informed PADPW that reconsideration was not provided for in HHS' regulations but that "a hearing in accordance with 45 CFR part 213" could be pursued. Administrative Record at 16.  PADPW instituted this action on May 18, 2004

### III.  DISCUSSION

A.     <u>The Appropriate Standards of Review Under the Federal Rules of Civil Procedure.</u>

HHS requests that this Court dismiss the plaintiff's complaint for failure to state a claim.  When deciding a motion filed pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must view all facts, and reasonable inferences drawn therefrom, in the light most favorable to the non-movant. *General Motors Corp. v. New A.C. Chevrolet, Inc.,* 263 F.3d 296, 325 (3d Cir. 2001).  Dismissal is appropriate only "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *see also Lorenz v. CSX Corp.*, 1 F.3d 1406, 1411 (3d Cir. 1993).  The Federal Rules of Civil Procedure do not require detailed pleadings of the facts on which a claim is based; instead, they require "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  That statement need merely give the defendant fair notice of the claim and the grounds upon which it rests. *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Notwithstanding this standard, the Court "need not credit a complaint's bald assertions or legal conclusions." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997) (internal quotations omitted).

In light of the minimal notice pleading requirements and because the dispute between the parties presents a disputed question of law not fact, the defendant's Motion to Dismiss must be

dismissed.  PADPW's Complaint raises an issue of subtle statutory interpretation and implicates issues of deference under *Chevron*; as a result, PADPW's cause of action will not be dismissed merely on the pleadings.

PADPW seeks summary judgment which is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c); s*ee also Belitskus v. Pizzingrilli*, 343 F.3d 632, 639 (3d Cir. 2003).  Summary judgment is inappropriate "if a disputed fact exists which might affect the outcome of the suit under the controlling substantive law." *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632, 637 (3d Cir.1993) (citation omitted).

The full administrative record of the case has been provided to the Court and made an official part of the record in this proceeding.  Although an administrative record is not listed in Rule 56(c) nor is it part of the pleadings, the Court will rely on the administrative record when it proceeds under Rule 56(c) to determine whether summary judgment should be granted.  *See, Lapid-Laurel, L.L.C. v. Zoning Bd. of Adjustment of Tp. of Scotch Plains*, 284 F.3d 442, 451 (3d Cir. 2002); *U.S. v. Spears*, 859 F2 284 (3d Cir. 1988); *Grandison v. Cuyler*, 774 f2d 598 (3d Cir. 1985).  The parties' motions did not present any disputed facts, as a result, the Court will decide this case as a matter of law.

B.      The Appropriate Standard Under the Administrative Procedures Act.

The Administrative Procedures Act (the "Act") governs judicial review of federal agency decisions.  5 U.S.C. § 701 *et seq*.  This Court's review of HHS' decision is governed by section 706(2), which sets the standards of review under the Act.  PADPW contends that the Administrator's decision should be set aside under the standard of section 706(2)(A) which instructs the Court to overturn agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Complaint at ¶ 16.  HHS has neither disputed that subsection (2)(A) provides the appropriate standard nor suggested a different standard  of review.

The Court  decides all relevant issues of law de novo under the standard set forth in 5 U.S.C. § 706(2)(A).  *National Indus. Sand Ass'n. v. Marshall*, 601 F.2d 689, 699 n.35 (3d Cir.

1979).  In other words, when presented with questions of law, the Court will subject the administrative judgment to plenary judicial review and  need not defer to an administrative agency's erroneous conclusion.  *See, e.g., Williams v. Metzler*, 132 F.3d 937, 946 (3d Cir. 1997); *Dill v. I.N.S.,* 773 F.2d 25, 28 (3d Cir.1985).  Agency determinations may be deemed arbitrary and capricious where "the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."  *Id.*

C.      Analysis of 42 U.S.C.§ 672(a).

PADPW raises only one issue in this case - whether HHS' decision to deny its amendment to the state plan was arbitrary and capricious.  PADPW asks the Court to reverse the HHS determination; declare HHS' interpretation that children must qualify for AFDC in the Removal Home in order to be eligible for AFDC-FC benefits arbitrary and capricious; and direct HHS to approve the plan amendment.  Complaint ¶ 16.  PADPW argues that the decision from the Ninth Circuit Court of Appeals in *California Department of Social Services v. Thompson*, 321 F.3d 835 (9th Cir. 2003) as well as the language and legislative history of 42 U.S.C. § 672(a) support its contention that HHS behaved arbitrarily and capriciously.  In addition, PADPW argues that deference to the agency's interpretation of the statute under *Chevron U.S.A., Inc. v. Natural Resources Counsel*, 467 U.S. 837 (1984) would be inappropriate.

Resolution of this case must begin with an examination of the statute governing AFDC-FC benefits  under Title-IV E. The relevant statutory section states:

(a) Qualifying children

Each State with a plan approved under this part shall make foster care maintenance payments ... under this part with respect to a child who would have met the requirements of section 606(a) of this title or of section 607 of this title (as such sections were in effect on July 16, 1996) *but for his removal from the home of a relative* (specified in section 606(a) of this title (as so in effect)), if–

(1) the removal from the home occurred pursuant to a voluntary placement agreement entered into by the child's parent or legal guardian, or was the result of a judicial determination to the effect that continuation therein would be contrary to the welfare of such child and (effective October 1, 1983) that reasonable efforts of the type described in section 671(a)(15) of this title for a child have been made;

6

(2) such child's placement and care are the responsibility of (A) the State agency administering the State plan approved under section 671 of this title, or (B) any other public agency with whom the State agency administering or supervising the administration of the State plan approved under section 671 of this title has made an agreement which is still in effect;

(3) such child has been placed in a foster family home or child-care institution as a result of the voluntary placement agreement or judicial determination referred to in paragraph (1); and

(4) such child–
(A) would have received aid under the State plan approved under section 602 of this title

(as in effect on July 16, 1996) in or for the month in which such agreement was entered into or court proceedings leading to the removal of such child from the home were initiated, or

(B) (i) would have received such aid in or for such month if application had been made therefor, or (ii) *had been living with a relative specified in section 606(a) of this title (as in effect on July 16, 1996) within six months prior to the month in which such agreement was entered into or such proceedings were initiated, and would have received such aid in or for such month if in such month he had been living with such a relative and application therefor had been made.*

42 U.S.C. § 672(a) (emphasis added).  The parties rely on the two italicized portions of section 672(a) for their arguments.

In 1996, section 606(a) provided the definition of a "dependent child" for purposes of the old AFDC program that has been replaced with TANF.  It stated that a "dependent child" was a:

needy child (1) who has been deprived of parental support or care by reason of the death, continued absence from the home ... or physical or mental incapacity of a parent, and who is living with his father, mother, grandfather, grandmother, brother, sister, stepfather, stepmother, stepbrother, stepsister, uncle, aunt, first cousin, nephew or niece, in a place of residence maintained by one or more of such relatives as his or their own home, and (2) who is (A) under the age of eighteen, or (B) at the option of the State, under the age of nineteen and a full-time student in a secondary school ... .

42 U.S.C. § 606 (1996).  In addition to section 606(a), current section 672(a) also cross references section 607 as it existed in 1996.  That section set forth another aspect of the definition of a "dependent child" for purposes of the old AFDC program; it provided that

[t]he term 'dependent child' shall, notwithstanding section 606(a) of this title, include a needy child who meets the requirements of section 606(a)(2) of this title, who has been deprived of parental support or care by reason of the unemployment ... of the parent who is the principal earner, and who is living with any of the relatives specified in section 606(a)(1) of this title in a place of residence maintained by one or more of such relatives as his (or their) own home.

42 U.S.C. § 607 (1996).  In other words, sections 606 and 607 as they existed in 1996 permitted

AFDC benefits for children living with their parents or legal guardians as well as children living with certain relatives if in either circumstance, the children had been "deprived of parental support or care."

The regulation most applicable to determining AFDC-FC eligibility was added in 2000. It states:

> (l) Living with a specified relative. For purposes of meeting the requirements for living with a specified relative prior to removal from the home under section 472(a)(1) ... and all of the conditions under section 472(a)(4), one of the two following situations must apply:
>
>> (1) The child was living with the parent or specified relative, and was AFDC eligible *in that home* in the month of the voluntary placement agreement or initiation of court proceedings; or
>>
>> (2) The child had been living with the parent or specified relative within six months of the month of the voluntary placement agreement or the initiation of court proceedings, and the child would have been AFDC eligible in that month *if s/he had still been living in that home*.

45 CFR § 1356.21 (emphasis added).

### 1.    PADPW's Contention That Decisions Issued in the *Thompson* Case Bind HHS in Pennsylvania.

As an initial matter, the Court does not accept PADPW's contention that the decision from the Ninth Circuit Court of Appeals in *Thompson* and the order issued by the district court on remand in that case, "binds" HHS in Pennsylvania. *See* Plaintiff's Brief in Support of Its Motion for Summary Judgment and In Opposition to HHS' Motion to Dismiss at pp. 7-8. Neither principles of *stare decisis* nor collateral estoppel are applicable because HHS is a government agency and its actions under review in this case occurred outside the Ninth Circuit. The *Thompson* decision is not binding precedent for this Court; neither does it bind HHS in Pennsylvania.

PADPW contends that the order issued by the United States District Court for the Eastern District of California on remand which directed HHS to "comply with [the California Department of Social Services] and *Rosales v. Thompson*, 321 F.3d 835 (9th Cir. 2003)" bound HHS' consideration of state plan amendments submitted by other states. That contention is not correct. The *Thompson* district court would have exceeded its jurisdiction had it issued an order that went beyond the issues presented in the action. In *Thompson* the court considered a challenge of HHS' denial of a state plan amendment submitted by the California Department of Social Services. On

8

appeal, the Ninth Circuit Court of Appeals concluded that the decision to deny California's state plan amendment was a violation of the Administrative Procedures Act and remanded "for a determination of what relief to grant" the individual intervenor. *Id.* at 857. The Ninth Circuit emphasized that injunctive relief might be appropriate and noted that the state, which had chosen not to participate in the appeal, could "reenter the litigation should it choose to do so and express its view on the appropriate form of relief." *Id.* The District Court was free, therefore, to fashion the relief owed to a single intervenor and to enjoin HHS in its interaction with the California Department of Social Services. That is, in fact, what the language of the remand order accomplished. It would be error to grant the district court order broader application than the issues presented in the *Thompson* case and it would be incongruous to allow a district court order on remand broader scope than the opinion issued by a Court of Appeals.

2.    **The Parties' Statutory and Legislative History Arguments.**

Both parties concede that section 672(a) neither expressly prohibits nor permits making a state's AFDC-FC eligibility determination based on AFDC qualification in a relative's Temporary Home. Instead, the parties rely on the implications of the statutory language and legislative history for their arguments.

PADPW contends that the "but for" clause in the preamble to section 672(a)[6] cannot be interpreted to mean that a child must have qualified for AFDC in the Removal Home to be eligible for AFDC-FC. Instead it contends that the "but for" phrase should be construed to mean the child would have qualified for AFDC "even if removal proceedings had not been instituted," such that the Removal Home or a Relative's Temporary Home would suffice for AFDC qualification. PADPW Brief in Support of Its Motion for Summary Judgment at p. 12. PADPW relies heavily on the Supreme Court's decision in *Miller v. Youakim*, 440 U.S. 125 (1979) for its "but for" argument. In *Miller*, the Supreme Court determined that children placed in foster homes where the

---

[6] The preamble provides that "[e]ach State with a plan approved under this part shall make foster care maintenance payments ... under this part with respect to a child who would have met the requirements of section 606(a) of this title or of section 607 of this title (as such sections were in effect on July 16, 1996) *but for his removal from the home of a relative* (specified in section 606(a) of this title (as so in effect)), ..."

foster family is related to the children were eligible for AFDC-FC just as children placed in the homes of unrelated foster families. *Miller*, 440 U.S. at 145-46. Prior to *Miller*, Illinois had interpreted the term "foster care facility" to mean that only foster homes run by a foster family unrelated to the foster child were eligible for AFDC-FC funds.

PADPW's reliance on *Miller* is somewhat misplaced because that case considered a different legal issue than the one before this Court; resolution of the legal issue in *Miller* did not require consideration of AFDC qualification. Instead, the Court had to determine, as a matter of law, whether children placed in foster care with relatives were eligible for AFDC-FC on the same terms as children placed with unrelated foster families, assuming that the AFDC eligibility had been satisfied.

In *Miller*, the Illinois Department of Children and Family Services approved and licensed Linda Youakim and her husband to be a foster family. The Youakims accepted care of two of Linda's four younger siblings. The children had been removed from their mother's home several years earlier and were placed in *unrelated* foster facilities for three years. The Court ultimately held that children in related foster families could received AFDC-FC just as children placed with unrelated foster families. The foster children in *Miller* went from the Removal Home, where they presumably qualified for AFDC, to unrelated foster facilities and then, ultimately, to related foster facilities.

Although the legal issue in *Miller* is different from the current action, dicta from that decision supports PADPW's interpretation of the statutory language. The Court emphasized that the "overriding goal" of the AFDC-FC program was to "provid[e] the best available care *for all dependent children* removed from their homes because they were neglected." *Miller*, 440 U.S. at 139 (citing S.Rep.No. 165, p. 6; 107 Cong. Rec. 6388 (1961)(remarks of Sen, Byrd))(emphasis added). The *Miller* Court also emphasized Congress' obvious "preference for care of dependent children by relatives, a policy underlying the categorical assistance program since its inception in 1935." *Id.* at 141-42 (citing S.Rep. No. 628. 74th Cong., 1st Sess., 16-17(1935) and H.R.Rep. No. 615, 74th Cong., 1st Sess., 10-12(1935)). Finally, *Miller* concluded that:

The overriding purpose [of AFDC-FC] was to assure that the most appropriate substitute

10

care be given to those dependent children so mistreated that a court has ordered them removed from their homes.  The need for additional AFDC-FC resources - both monetary and service related - to provide a proper remedial environment for such foster children arises from *the status of the child as a subject of prior neglect ... ..*

*Miller,* 440 U.S. at 145 (emphasis added).

In addition to its reliance on *Miller,* PADPW also culls support for its position from the *Thompson* decision from the Ninth Circuit Court of Appeals.  In that case, the Court of Appeals considered HHS' denial of a state plan amendment under the same circumstances at issue here. *California Dep't of Social Services v. Thompson*, 321 F.3d 835 (9th Cir. 2003).   The individual intervenor in *Thompson*, Ms. Rosales, had a grandson who had been physically removed from the custody of his mother when he was five months old because of physical abuse.  *Id.* at 839.  Prior to the legal removal action, California welfare officials asked Ms. Rosales to take him into her home temporarily.  Subsequently, Ms. Rosales became the child's court-appointed foster parent. *Thompson*, 321 F.3d at 839.  The child would not have qualified for AFDC in his mother's home because of income restrictions but would have met the requirements in Ms. Rosales' home where he was residing at the time of the legal removal action.  *Id.*

The district court in *Thompson* concluded that HHS' interpretation of section 672(a) was reasonable and granted its motion for summary judgment.  *California v. Shalala*, 115 F.Supp.2d 1191 (E.D. Cal. 2000).  On appeal, the Ninth Circuit Court of Appeals reversed the district court's decision; it assumed without deciding that *Chevron* deference was appropriate and then concluded that HHS' interpretation of section 672(a) was unreasonable because it was "inconsistent with the statutory language as construed in light of *Miller* ... ha[d] no support in the statute's legislative history ... [and] undermine[d] the statutory protections for foster children that Congress intended to provide."  *Thompson,* 321 F.3d. at 856-57.   The *Thompson* Court noted that HHS' interpretation "might have been a reasonable construction of the statute" prior to the Supreme Court's decision in *Miller,* but after that case, HHS' interpretation of AFDC qualification and AFDC-FC eligibility was patently unreasonable.  *Id.* at 857.

**3.      Deference Owed to HHS' Interpretation of 42 U.S.C. § 672(a).**

A Court considers whether to apply *Chevron* deference  when "it appears that Congress

delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority." *United States v. Mead Corp.,* 533 U.S. 218, 226-27 (2001). *Chevron* requires a two-step analysis. First, the Court considers whether Congress has directly spoken on the precise question at issue. If so, the Court "must give effect to the unambiguously expressed intent of Congress." *Chevron v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984); *Household Credit Servs. Inc. v. Pfennig,* 541 U.S. 232 (2004) (quoting *Chevron,* 467 U.S. at 842-43). If the consideration required by the first step leads to the conclusion that the applicable statute is silent or ambiguous with respect to the issue before the Court, the second step of the analysis requires the Court to defer to the agency's interpretation if it is "based on a permissible construction of the statute." *Id.* at 843. In other words, this "second step" of *Chevron* requires deference unless the agency's interpretation was arbitrary, capricious, or manifestly contrary to the statute. *Chen v. Ashcroft*, 381 F.3d 221, 223-24 (3d Cir. 2004). Essentially, this is an inquiry to determine wether the agency's interpretation is reasonable.

Agency interpretations not entitled to *Chevron* deference are nonetheless accorded some persuasive weight under the standard articulated in *Skidmore v. Swift,* 323 U.S. 134 (1944). *See Mercy Catholic Medical Center v. Thompson*, 380 F.3d 142, 155 (3d Cir. 2004). The *Skidmore* Court explained:

> We consider that the rulings, interpretations and opinions of the Administrator ..., while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance. The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.

*Skidmore*, 323 U.S. at 140.

In *United States v. Mead Corp.*, 533 U.S. 218 (2001) the Supreme Court added another nuance to the *Chevron* analysis. In that case and the subsequent decision in *Barnhart v. Walton*, 535 U.S. 212 (2002) the Supreme Court suggested that agency interpretations not embodied in a regulation with notice and comment rule making might not warrant *Chevron* deference. The Ninth

Circuit Court of Appeals in *Thompson* did not determine whether *Chevron* deference was proper; instead it "assume[d] without deciding" that *Chevron* deference was appropriate. *Thompson*, 321 F.3d at 848. Applying that standard, the *Thompson* court concluded that HHS' interpretation of section 672(a) was unreasonable. *Id.* Unlike *Thompson*, this Court will decide whether *Chevron* or *Skidmore* deference is appropriate.

       (a)       Sources of HHS' Interpretation.

       In the instant case, HHS' "interpretation" is found in a letter sent to PADPW denying its plan amendment. As the Supreme Court held in *Christensen v. Harris County*, agency opinions conveyed in correspondence to an individual or entity are informal communications that should not, without additional evidence, be given *Chevron* deference. *Christensen v. Harris County*, 529 U.S. 576 (2000).

       The only HHS regulation arguably on point, 45 CFR § 1356.21,[7] does not mention Temporary Relative Housing and its impact on the AFDC-FC eligibility determination. Where a regulation "contemplates" but does not specify or require a certain interpretation of a statutory provision, that interpretation cannot be given *Chevron* deference. *See Christensen v. Harris County,* 529 U.S. 576, 587-88 (2000); *Ebbert v. Daimler Chrysler Corp.,* 319 F.3d 103, 109-10 (concluding that an EEOC regulation directing EEOC personnel to issue a letter notifying a claimant of the right to sue "in no way preclud[ed] notification by other means" without additional specificity in the regulation indicating that a writing was required).

       (b)       Application of *Mead* to HHS' Interpretation.

       Even if the Court were to assume that HHS' letter to PADPW or the letter in conjunction

---

[7]As noted in the text above, 45 CFR § 1356.21 states, "For purposes of meeting the requirements for living with a specified relative prior to removal from the home under section 472(a)(1) ... and all of the conditions under section 472(a)(4), one of the two following situations must apply:

      (1) The child was living with the parent or specified relative, and was AFDC eligible in that home in the month of the voluntary placement agreement or initiation of court proceedings; or

      (2) The child had been living with the parent or specified relative within six months of the month of the voluntary placement agreement or the initiation of court proceedings, and the child would have been AFDC eligible in that month if s/he had still been living in that home.

with 45 CFR § 1356.21 specifically excluded AFDC qualification in a relative's Temporary Home, after *Mead* there is a distinction between agency regulatory action that "interprets a statute or fills in a gap for which Congress delegated such authority to the agency" and agency actions that "merely implement a statute for which no delegation of authority was involved." *Ebbert v. Daimler Chrysler Corp.,* 319 F.3d 103, 109 (quoting *Chevron*, 467 U.S. at 843-44).

In *Ebbert,* the Third Circuit Court of Appeals considered the EEOC's interpretation of a statutory requirement that the EEOC provide "notice"of a right to sue to the complainant in a discrimination action in order to initiate the statute of limitations. The EEOC had interpreted the statute's notice requirement so that only written notice in the form of a letter from the EEOC initiated the statute of limitations for ADA discrimination claims. *Ebbert*, 319 F.3d at 109. The *Ebbert* Court emphasized that the statute was silent as to the distinction between written and oral notice and the only statutory section delegating authority to the EEOC merely authorized the EEOC to "issue, amend, or rescind suitable procedural regulations to carry out the provisions" of the statute. *Id.; see also* 42 U.S.C. § 2000e-12(a)(2000). The *Ebbert* Court closely scrutinized the statutory language; it ultimately "infer[ed]" that Congress only intended to delegate to the EEOC the authority to issue regulations for its own administrative review of discrimination complaints not the broader authority to interpret or attempt to clarify the statutorily specified process for instituting an action in federal court. *Id.* at 112-13.

In the case at bar, HHS has undertaken an interpretive activity that is akin to the EEOC's effort to interpret what form of "notice" the statute required. In section 672(a) and related statutory sections, Congress neither expressly nor implicitly suggested that HHS should interpret perceived gaps in the AFDC-FC eligibility provisions. Instead, the statutory provisions contain detailed requirements for a qualifying state plan and merely left to HHS the administrative task of reviewing and approving state plans and plan amendments in conformity with the statutory requirements. HHS' execution of that administrative task is pursuant to an express delegation of

Congressional authority.[8]  However, Congress did not delegate any sort of interpretive function to HHS such as the promulgation of regulations specifying when a child is eligible for AFDC-FC. The facts of this case are, therefore, much like those at issue in *Ebbert*.

Had Congress delegated to HHS an interpretative function such as fleshing out, developing or issuing regulations for AFDC-FC eligibility, this Court would apply *Chevron* deference to HHS' interpretation.  However, in this case, as it did with the EEOC, Congress merely delegated to the agency an administrative responsibility.    Applying *Ebbert* and *Mead*, this Court must conclude that HHS' interpretation of the AFDC qualification requirement contained in section 672(a) is eligible for *Skidmore* rather than *Chevron* deference.

(c)     *Skidmore* Persuasiveness.

Applying the standard articulated by the Supreme Court in *Skidmore* the Court concludes that HHS' interpretation is not persuasive.  Section 672(a) cannot be interpreted as precluding AFDC-FC benefits for children who would have qualified for AFDC in any statutorily specified relative's home[9], including a relative's Temporary Home, at the time of removal. The preamble to section 672(a)  states that:

> Each State with a plan approved under this part shall make foster care payments ... under this part with respect to a child who would have met the requirements of (sections 606(a) or 607 as those provisions were in effect on July 16, 1996) but for his removal from the home of a relative (specified in section 606(a) of this title (as so in effect)) ...

42 U.S.C. § 672(a).  As noted above, sections 606 and 607 as they were in effect in 1996 provided the definition of dependent children deprived of parental care and both sections include a list of relatives that a child could be living with and found to be "dependent" such that AFDC benefits would have been appropriate.

The statutory preamble does not limit AFDC qualification to the Removal Home and it does not state that Temporary Relative Housing cannot "count" for purposes of determining AFDC

---

[8]"The Secretary shall approve any plan which complies with the provisions of subsection (a) of this section" 42 U.S.C. § 671(b).

[9] The AFDC program specified the following relatives: "father, mother, grandfather, grandmother, brother, sister, stepfather, stepmother, stepbrother, stepsister, uncle, aunt, first cousin, nephew or niece."  42 U.S.C. § 606 (1996).

qualification and AFDC-FC eligibility.  HHS claims that the "but for" clause in the preamble implicitly requires that AFDC requirements be satisfied in the Removal Home; it suggests that the true meaning of the "but for" clause is that a child must have ceased to qualify for AFDC as a result of his or her legal removal from the home of a parent or legal guardian. This interpretation of the statute suggests that removal must be the act that renders the child ineligible for or causes the child to cease to qualify for  traditional AFDC benefits.  Instead, the "but for" clause should be read to indicate that a child must have been eligible for AFDC regardless of the removal action.

HHS' reading contradicts the fundamental rationale of the Supreme Court's decision in *Miller v. Youakim,* 440 U.S. 125 (1979); as the Court explained:

> The need for additional AFDC-FC resources - both monetary and service related - to provide a proper remedial environment for ... foster children raised from the status of the child as a subject of prior neglect (from his or her parents or legal guardian), not from the status of the foster children.  Appellants attribute to Congress an intent to differentiate among children who are equally neglected and abused, based on a living arrangement bearing no relationship to the special needs that the AFDC-FC program was created to meet.

*Miller*, at 145.  The *Miller* court ultimately concluded that children living with related foster parents were equally eligible for AFDC-FC payments as children living with unrelated foster parents.  The Supreme Court's decision thus broadened and equalized the class of children eligible for AFDC-FC benefits; it would be difficult to reconcile that expansion of the class of eligible children with HHS' interpretation which would essentially carve out the class of children living with related foster parents who would not have qualified for AFDC benefits in the Removal Home but would have satisfied the criteria while living in Temporary Relative Housing prior to that relative becoming the approved foster parent. That conclusion would be particularly difficult to reconcile with *Miller* considering many relatives providing Temporary Relative Housing ultimately apply for and become the licensed foster parent - as occurred in Ms. Rosales' situation in *Thompson*.  HHS' interpretation could discourage relatives who are providing Temporary Relative Housing from seeking state approval to become foster parents.

As the *Miller* opinion aptly demonstrates, the aim of the AFDC-FC program is not to provide financial assistance to children who are impoverished at the time of removal, but rather to aid *all* neglected children removed from abusive homes.  *Id.* at 145.  These neglected and abused

children have "special needs" resulting from  the mental and physical abuse they have often

endured.  *Id.* at 143.   Children should not be exempted from the AFDC-FC benefits merely

because, as occurred in *Thompson,* the parents or legal guardians who abused or otherwise

neglected them furnished financially viable homes while a relative's home where children are sent

to avoid further abuse is less well off.  *Id.*  Indeed, the congressional declaration of purpose

contained in section 670 contains no such limitation; it provides that the Title IV-E benefits were

designed "for the purpose of enabling each State to provide, in appropriate cases, foster care ... for

children who otherwise would have been eligible for assistance under the State's [AFDC plan] (as

such plan was in effect on June 1, 1996)..."  42 U.S.C. § 670.  This broad language suggests that

eligibility for AFDC-FC benefits should be made available to children who would have qualified

for AFDC in *any* pre-foster care environment including both the Removal Home or a relative's

Temporary Home.  Congress certainly could have used more limiting language if that was its

intent.

      Although the "but for" clause cannot be aligned with HHS' interpretation of section 672(a),

the Court must also consider the remainder of the statute.  Subsections (1)-(3) provide various

requirements for AFDC-FC eligibility; these three subsections require that removal proceedings

have occurred or the parent or legal guardian entered into a voluntary placement agreement, that

the child's placement is the State's responsibility, and that the child has been placed in a foster

family home or similar child care institution.   42 U.S.C. § 672(a)(1)-(3).   Only subsection (4)

addresses prior AFDC qualification.

      Subsection (4) provides:

Such child - (A) would have received aid under the State plan approved under section 602 of this title (as in effect on July 16, 1996) in or for the month in which such agreement was entered into or court proceedings leading to the removal of such child from the home were initiated, or (B) (i) would have received such aid in or for such month if application had been made therefore, or (ii) had been living with a relative specified in section 606(a) of this title (as in effect on July 16, 1996) within six months prior to the month in which such agreement was entered into or such proceedings were initiated, and would have received such aid in or for such month if in such month he had been living with such a relative and application therefore had been made. ...

17

42 U.S.C. § 672(a)(4).[10]   As with the preamble, nothing in subsection (4) expressly states that the Removal Home is the exclusive site for pre-foster care qualification for AFDC.   Instead a close reading of subsection (4) indicates that it generally requires AFDC qualification at the time of the removal.  Under the old AFDC program, AFDC could be paid to a child living with a parent or legal guardian or one of the fifteen relative categories listed in section 606(a).

Thus, the language of section 672 does not expressly support HHS' interpretation.  Resort to the legislative history of this section is equally futile.  Both parties point to bits of legislative history from various incarnations of the statute since its inception in 1961[11] supporting their arguments.  Neither party's contentions are persuasive as the legislative history is at best inconclusive.  The Court is reminded of the often quoted passage attributed to Judge Harold Leventhal of the D.C. Circuit Court of Appeals – that researching legislative history to bolster one's argument is like looking out over a crowd to find one's friends.  *Exxon Mobil Corp. v. Alapattah Servs Inc.* 125 S.Ct. 2611, 2625 (2005)(citing Wald, Some Observations on the Use of Legislative History  in the 1981 Supreme Court Term, 68 Iowa L. Rev. 195, 214 (1983)).  Here both parties point to vague passages that seemingly support their divergent positions; neither position is convincing.

Because the legislative history is, at best, inconclusive and because the statutory language does not expressly rule out qualification in a relative's Temporary Home, the Court finds HHS' interpretation of section 672 unpersuasive and the disapproval by HHS of Pennsylvania's Title IV-E state plan amendment was arbitrary and capricious.  It would be incongruous to provide AFDC-

---

[10]Subsections (4)(A) and (4)(B)(1) are somewhat redundant now that AFDC has been replaced by TANF. Subsection(4)(B)(1) was added to section 672(a) to add children who would have received AFDC benefits had their parents applied for them.  Subsection (4)(A) addressed children actually receiving AFDC when the program was in effect.  After cessation of AFDC, these two provisions melded into one and apply to all children who would have qualified for AFDC.

[11]The AFDC-FC program began in 1961 and it provided the same benefit as the AFDC program.  It was drafted to remove any possible financial disincentive on the part of the states to remove a child from an otherwise abusive home. In 1968, the AFDC-FC program was modified so that it provided more funds to children than traditional AFDC benefits and so that participation in the program was mandatory for every state participating in the AFDC program.  In 1980, the program was modified again; this time, the modification added children removed via voluntary placement agreement.

FC benefits to children in related and unrelated foster care, as confirmed in *Miller*, yet limit funding to only those children that would have qualified for AFDC in their parent or legal guardian's home.  Often children are physically removed from their homes and live with relatives temporarily.  These relatives are often the best suited to care for the neglected children and often become the foster family.

## IV.  CONCLUSION

For the reasons hereinabove stated, HHS' Motion to Dismiss will be denied and PADPW's Motion for Summary Judgment will be granted.  An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| COMMONWEALTH OF<br>PENNSYLVANIA, DEPARTMENT OF<br>PUBLIC WELFARE, | ) <br> ) <br> ) | 2:04-cv-00742 |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA; and,<br>DEPARTMENT OF HEALTH AND<br>HUMAN SERVICES, | ) <br> ) <br> ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER OF COURT**

AND NOW, this 27th day of January, 2006, in accordance with the foregoing

Memorandum Opinion, it is hereby **ORDERED, ADJUDGED  and DECREED** as follows:

1) The defendant's Motion to Dismiss is  **DENIED WITH PREJUDICE** forthwith;


2) The plaintiff's Motion for Summary Judgment Pursuant to F.R.C.P. 56A is

**GRANTED.**   The disapproval by the Department of Health and Human Services of

Pennsylvania's Title IV-E state plan amendment was arbitrary and capricious and HHS shall

approve Pennsylvania's Title IV-E state plan amendment within sixty (60) days.


The District Court Clerk shall docket this case closed.


BY THE COURT:


s/  Terrence F. McVerry
United States District Court Judge

cc:    Jason W. Manne
        Email: jmanne@state.pa.us

        Jessica Lieber Smolar
        United States Attorney's Office
        jessica.smolar@usdoj.gov

        Sheila Lieber
        Department of Justice Civil Division
        901 E Street, N.W.
        Room 938
        Washington, DC 20530